**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF NEBRASKA AT KEARNEY; BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA; DAVID BRANDT; CHERYL BRESSINGTON; CHRISTY HORN; and GAIL ZELLER,<br><br>Defendants. | ) | CASE NO. 4:11CV3209<br><br>**STIPULATION AND ORDER REGARDING DISCOVERY** |

Plaintiff the United States of America and Defendants University of Nebraska at Kearney, Board of Regents of the University of Nebraska, David Brandt, Cheryl Bressington, Christy Horn, and Gail Zeller (collectively "Parties"), by and through their undersigned counsel, mutually seek to reduce the time, expense and other burdens of discovery of documents, things and electronically stored information ("ESI"). Therefore, the Parties are entering into this Stipulation to govern discovery obligations in this action.

The Parties stipulate as follows:

1) **Obligations to Preserve**

a. Preservation of Documents, Things and ESI. All potentially relevant documents, things, and ESI, other than those exempted from discovery in paragraph 5, created before or after the date of entry of this Stipulation, must be preserved in accordance with the Federal Rules of Civil Procedure ("FRCP"), the Federal Rules of Evidence, and the relevant controlling principles of law.

b. “Draft Document(s)”. For the purposes of this litigation, the obligation to preserve potentially relevant documents, things, and ESI extends to draft paper and electronic documents, except as provided in paragraph 5. A “draft” document (hereinafter “Draft Document”) for the purposes of this Stipulation and Order, means a preliminary version of a document that has been shared by the author with another person (by email, print or otherwise) or one that the author no longer intends to finalize or to share with another person. A Party need not preserve a document before and after every change, so long as Draft Documents are preserved.

c. Red-lined and Marked-up Documents. For the purposes of this litigation, the obligation to preserve potentially relevant documents, things, and ESI extends to red-lined or marked-up electronic documents, except as provided in paragraph 5. This obligation extends to both Draft Documents and finalized documents for which a red-lined or marked-up version exists.

d. Webpage Content. Each Party must preserve potentially relevant information that it posts on the following web pages – http://www.unk.edu/ and pages contained therein. If subsequent to the date of entry of this Stipulation, any of the parties create a webpage not listed in this subparagraph, to which potentially relevant information is posted, that Party must preserve said information. Information that must be preserved includes text, photos, audio files, podcasts, and videos. Parties must be prepared to provide the date information is posted and edited on the covered web pages. Parties need not preserve the visual formatting of its web pages so long as it preserves the substantive information described above. The material can be preserved in any readily accessible format, *e.g.* Microsoft Word.

2) **Provisions for the Production of All Documents and ESI**

a. Form and Manner of Production of All Documents and ESI. Documents and ESI that can be accurately represented in black and white shall be scanned or converted to single page Tagged Image File Format ("TIFF" or ".tiff format") files, using CCITT Group IV compression. All images shall be scanned or converted at 300 d.p.i. and reflect, without visual degradation, the full and complete information contained on the original document. Photographs, color brochures, or other like documents that cannot be accurately represented in black and white or documents that are primarily in color shall be scanned or converted to JPEG files using a high quality setting. The parties will honor reasonable requests for either the production of the original document for inspection and copying or production of any color image of the document, thing or ESI. All images shall be saved in a directory named IMAGES. Native files shall be saved in a directory named NATIVE with the proper Windows associated extension.

b. Bates Numbering. The Parties agree to produce all imaged documents with a legible, unique page identifier ("Bates Number") electronically "burned" onto the image in the lower right hand corner or at a location that does not obliterate, conceal, or interfere with any information from the source document. The Bates numbering convention shall be in the format "XX########" where "XX" represents the short character abbreviation for the producing party and "########" represents the eight-digit sequential number of the page being produced by that party. Documents produced by the parties shall be abbreviated as follows: United States = US; Defendant University of Nebraska at Kearney = UNK; the investigative file from the Department of Housing and Urban Development = HUD. If any of the individual Defendants produces documents separately from the University of Nebraska at Kearney, such documents shall be

abbreviated as LASTNAME.  If the Board of Regents of the University of Nebraska produces

documents separately from the University of Nebraska at Kearney, such documents shall be

abbreviated as "BOARD."  For example, the first Bates labeled document produced by the

United States should be labeled "US00000001".  Images shall be named as the Bates Number.tif

or Bates Number.jpg.  Native files shall be named as Bates Number.ext.

        c.         Production Media.  The Parties agree to produce documents on CD-ROM, DVD,

or external hard drive, (the "Production Media"), depending on the volume of the production.

Each piece of Production Media shall identify a production number corresponding to the

production "wave" and a number of the volume of material in the wave.  For example, if the first

production wave by a Party comprises document images on three hard drives, the Party shall

label each hard drive in the following manner in numeric sequence: "001.001"; "001.002";

"001.003."  If the second production comprises three DVDs, the Party shall label each DVD in

the following manner in numeric sequence:  "002.001"; 002.002"; "002.003."  Additional

information that shall be identified on the physical Production Media shall include: (1) the case

number, (2) the producing party's name, and (3) the production date. The type of materials on

the media (*e.g.*, "Documents", "OCR Text", *etc.*) and the Bates Number range(s) of the materials

on the Production Media shall also be contained on the Production Media, and where not

practicable to do so may be provided in an accompanying letter.

        d.         Cross Reference File.  The Parties shall produce a "cross reference file" in

Concordance Opticon .log format, to accompany the produced images.  The cross reference file

shall list all images with the corresponding Bates Numbers and path information for links

between the images and, where appropriate, native files.  The cross reference file shall include

information about where each document begins and ends, to facilitate the use of the produced

images through Concordance.  The Parties shall meet and confer to the extent reasonably

necessary to facilitate the import and use of the produced materials with Concordance.

e.        Load File.  The Parties shall produce a "load file", containing the delimiters

specified in Attachment A.  The load file shall provide the image cross reference file with Bates

Numbers, relative path to images, and document break indicators.  The load files shall be

provided in a directory named DATA, in a Concordance Opticon .log file format.  Do not

include OCR/extracted text in the DAT file.

f.        OCR/Extracted Text.  The Parties will produce corresponding Optical Character

Recognition ("OCR") text files for all hard-copy documents and any electronic documents that

require redaction prior to production.  For documents that exist natively in electronic format that

have not been redacted and that are produced as images, the Parties shall produce extracted text

files reflecting the full text that has been electronically extracted from the original, native

electronic files.  The OCR and extracted text files shall be produced in ASCII text format and

shall be labeled and produced on Production Media in accordance with the provisions of

paragraph 2(c).  These text files will be named with the unique Bates Number of the first page of

the corresponding document followed by the extension ".txt."  The OCR and extracted text files

shall be produced in a manner suitable for importing the information into Concordance.  OCR

and extracted text files shall be saved in a directory named TEXT.  All documents should have

an accompanying text file even if zero size.

g.        The meta data fields specified in Attachment A shall be provided in Concordance

.dat format with standard delimiters.

       h. Irrespective of which Party issued the requests for production of documents, things and ESI, the producing Party shall serve a copy of responsive production to each of the other Parties.

i. The parties will produce documents, things and ESI on a rolling basis so as to provide each other with documents, things and ESI as expediently as possible.

3) <u>**Electronically Stored Information**</u>

a. <u>Format for Production of Electronic Documents:</u>

i. E-mail will be produced as image files and in their original native file with related searchable text and metadata (to the extent it exists) as described in Attachment A. Emails shall be saved or converted to Outlook .MSG format as the native file format.

ii. All spreadsheets, *e.g.*, Excel or Quattropro, and PowerPoint presentations will be produced as image files and in their original native file with related searchable text and metadata (to the extent it exists) as described in Attachment A.

iii. All other electronic documents not specifically discussed elsewhere will be produced as image files and in their original native files with related searchable text and metadata (to the extent it exists) as described in Attachment A. If said documents in their original form cannot be converted to TIFF as described above, the Parties promptly will meet and confer concerning the form of such production.

iv. Documents with children (*e.g.* emails with attachments, archive files such as zip, and files with embedded documents) shall be treated as separate

documents. Each document (parent and child) shall have the same attachment range as a way of identifying the group as specified in the Attachment Range filed of Attachment A.

v. In the event that a Party needs to redact a portion of a document for which only a native file is produced, *e.g.*, Excel and PowerPoint, the Parties will meet and confer regarding production of the redacted document.

vi. Any encryption or password protection of any file is to be removed or the passwords provided. If software is required to open encrypted files, the Party producing the encrypted files must provide the software.

vii. The Parties shall meet and confer regarding production of ESI contained within a proprietary or specialized database.

b. Search terms. The parties shall meet and confer about initial proposed search terms. Either party may also propose custodians and date limitations for searches. Within ninety days of when the parties agree on an initial set of search terms, the Parties shall conduct a further meet and confer to determine whether modifications should be made to those search terms.

i. Each Party shall be provided with an opportunity to propose additions or amendments to the search procedures and terms;

ii. The Parties acknowledge that the agreement to the use of such search procedures and terms shall not be construed as a waiver of any Party's right to request subsequent searches and productions; particularly where there is a showing that the agreed-to search terms and procedures have resulted in inadequate productions or failed to identify relevant materials.

The Parties reserve their right to object to any additional requests or subsequent searches; and

iii. Documents identified by search terms may be reviewed for privilege, confidentiality, redactions and relevance or responsiveness prior to production.

c. Use of Deduplication Software: Parties agree to use MD-5 hash values to deduplicate exact duplicate documents [across custodians] or [for each custodian]. As noted in Attachment A, MD-5 hash values will be calculated at the time of collection or processing for all categories of ESI.

4) **Production of Paper Documents**:

a. Format for Production of Paper Documents. The Parties agree to produce hard-copy documents as TIFF files with related OCR text.

b. Document Unitization. To the extent possible and on a going-forward basis, the Parties will endeavor to apply unitization practices consistent with the following description: Each page of a hard copy document shall be scanned into an image and if a document is more than one page, the unitization of the document and any attachments shall be maintained as it existed in the original when creating the image file. For documents that contain fixed notes, (*e.g.*, post-it notes), the pages will be scanned both with and without the notes and those pages will be treated as part of the same document. The relationship of documents in a document collection (*e.g.*, cover letter and enclosures, email and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process. If more than one level of parent-child relationship exists, documents will be kept in order, but all will be treated as

children of the initial parent document. Such information shall be produced in conformity with the Attachment Range field in Attachment A in a manner which enables the parent-child relationship among documents in a document collection to be reconstituted by the receiving party in Concordance.

5) **Preservation Not Required for Certain Documents, Things, and ESI**

a. ESI:

i. The Parties agree that except as provided in paragraph 9, the Parties need not preserve, continue to preserve, or provide a privilege log for the following categories of ESI:

a. Voicemail messages;

b. Electronic mail, SMS messages or "pin to pin" messages sent to or from a Personal Digital Assistant (*e.g.* Blackberry Handheld) provided that a copy of electronic messages is saved in another reasonably accessible location;

c. Other electronic data stored on a Personal Digital Assistant, such as calendar or contact data or notes, provided that a copy of such information is saved in another reasonably accessible location;

d. Logs of calls made to or from cellular phones[1];

e. Temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

f. Server, system or network logs;

[1] "Logs of calls" excludes history of calls, texts, and other communications from cellular phones provided from a source other than the cellular phone such as those listed in cellular phone service bills/invoices and/or those that may be produced to the parties by cellular phone providers.

g.  Data from photocopiers or fax machines;

h.  Autosaved copies of electronic documents;

i.  Delivery or read recipients of electronic mail;

j.  Duplicate copies of an electronic message sent to multiple recipients so long as the copy retained accurately reflects all recipients of the email and the entire contents of the email, including all attachments.

ii.  Electronic Back-up Systems.  Potentially relevant ESI, as that term is defined in Rule 26 of the FRCP, need not be preserved or described on a privilege log  if the following three conditions are met:

a.  It is stored in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows; and

b.  It is routinely purged, overwritten or otherwise made not reasonably accessible in accordance with an established, documented, and routine system maintenance policy; and

c.  It has been preserved on other, accessible electronic media.

b.  Documents Created by, and Exchanged Solely Between and Among, Counsel for the Respective Parties.  The Parties agree that, for purposes of this litigation, the Parties need not preserve,  produce, or create a privilege log for any document, including Draft Documents, as defined in paragraph 1(b), that were created by, and exchanged solely: 1) among attorneys or staff within the United States Department of Justice; 2) between attorneys or staff of Baird Holm LLP and employees or officers of Defendant Board of Regents of the University of Nebraska or

Defendant University of Nebraska at Kearney, 3) between attorneys or staff of Baird Holm LLP and any of the individually named Defendants; 4) between attorneys and staff of the United States Department of Justice and attorneys and staff for the United States Department of Housing and Urban Development; and 5) attorneys and staff of the United States Department of Justice and Ms. Brittany Hamilton. This subparagraph shall not apply to documents described in this subparagraph if a party presents evidence of or bases a claim or defense on advice or investigation by counsel, counsel's staff, or investigators or consultants hired by counsel.

c. Trial-Preparation Protections for Communication Between a Party's Attorney and Expert Witness. Communication between a Party's attorney and any witness required to provide a report under Rule 26(a)(2)(B) of the FRCP shall be protected from disclosure and shall not be produced in discovery regardless of the form of the communication, nor shall a privilege log be produced for such communications, except to the extent provided by FRCP 26(a)(4).

d. No Discovery of Material Not Required To Be Preserved. The Parties agree not to seek discovery of documents, things, and ESI that need not be preserved pursuant to paragraph 5. If any discovery request is susceptible of a construction which calls for the production of ESI that need not be preserved pursuant to paragraph 5, such items need not be provided or identified on a privilege log pursuant to Rule 26(b)(5) of the FRCP.

6) **Other Preservation Obligations Not Affected**. This Stipulation in no way modifies, amends, limits, or obviates any of the Parties' obligation to maintain and preserve documents, things, and ESI where required by law or as a result of litigation or anticipated litigation in this case or in any other matter except for the exemptions delineated in paragraph 5. Also, nothing in this Stipulation and Order shall affect any other obligations of the Parties to preserve documents,

things, and ESI for other purposes, such as pursuant to court order, administrative order, statute,

or in response to other anticipated litigation.

7)      **Preservation Does Not Affect Discoverability or Claims of Privilege**.  The Parties

agree that by preserving documents, things, and ESI for the purpose of this litigation, they are

not conceding that such material is discoverable, nor are they waiving any claim of privilege.

Except as otherwise provided in paragraph 5, nothing in this Stipulation shall alter the

responsibilities or obligations of the Parties to provide a privilege log for material withheld under

a claim of privilege.

8)      **Privilege Logs**. The Parties agree that for each document, thing, or ESI withheld based

on an asserted claim of privilege, the Party asserting the privilege must produce a privilege log

pursuant to Rule 26(b)(5)(a) of the FRCP, except as provided in paragraph 5.  The privilege log

must contain the Bates Number, the type of document or ESI, whether the document or ESI

contains any attachments, the date, authors, recipients, copyees, privilege(s) claimed, the title of

the document or ESI, the purpose of the document or ESI and the basis for the claimed privileges

or protections with information sufficient to establish the elements of each asserted privilege.

An embedded email should be separately identified and logged.  E-mail attachments should be

identified as attachments and separately logged.

9)      **Existing Retention Policy**.  Notwithstanding subparagraph 5(a), if on the date of this

Stipulation, any Party that has a policy established by that Party's official decision-making

authority responsible for the retention of documents, things, and ESI that results in the routine

preservation of any of the categories of information identified in paragraph 5(a), such Party shall

continue to preserve such information in accordance with its policy. However, the Parties shall

have no obligation, in response to discovery requests, to identify, collect, produce, or create

privilege logs for documents, things, or ESI covered by paragraph 5(a).

10)     **Sanctions**.  No Party shall seek sanctions pursuant to the FRCP, the contempt powers of

the Court, or any other authority, against another Party for the failure to preserve documents,

things, or ESI that is not required to be maintained pursuant to paragraph 5.

11)     **Inadvertent Production of Documents**:

        a.      The Parties agree that a disclosure of communications, documents, things, and

ESI covered by the attorney-client privilege, work product protection or governmental privileges

does not operate as a waiver in this proceeding if:

                i.      The disclosure is inadvertent and is made in connection with this litigation

                        or the underlying investigation; and

                ii.     The holder of the privilege or protection took reasonable precautions to

                        prevent disclosure and took reasonably prompt measures, once the holder

                        knew or should have known of the disclosure, to rectify the error.

        b.      If information produced in discovery is subject to a claim of privilege or

protection as referenced above, the Party making the claim may notify any Party that received

the information of the claim and the basis for it.  After being notified, a Party must make prompt

and reasonable efforts to return, sequester, or destroy the specified information and any copies it

has; must not use or disclose the information until the claim is resolved; must take prompt and

reasonable steps to retrieve the information if the Party disclosed it before being notified; and

may promptly present the information to the court under seal for a determination of the claim.

The producing Party must preserve the information until the claim is resolved.

12) **Costs of Document Production**. Each Party shall bear the costs of producing its own documents, things and ESI, absent extraordinary circumstances. Should a party believe such circumstances exist, such party shall seek an order from the court to modify this paragraph.

Dated March 1, 2012

Respectfully submitted,

| _s/Scott P. Moore (per email authorization)___ | __s/Mary J. Hahn________ |
|---|---|
| Scott Parrish Moore (NE# 20752)<br>of BAIRD HOLM LLP<br>1500 Woodmen Tower<br>1700 Farnam St<br>Omaha, NE 68102-2068<br>Phone: 402-344-0500<br>Email: spmoore@bairdholm.com<br><br>and<br><br>Alison D. Basye (NE# 23337)<br>of UNIVERSITY OF NEBRASKA<br>Varner Hall<br>3835 Holdrege Street<br>Lincoln, NE 68583-0745<br>Phone: 402-472-1201<br>Fax: 402-472-2038<br>Email: abasye@nebraska.edu<br><br>Attorneys for Defendants | STEVEN H. ROSENBAUM[2]<br>Chief<br>REBECCA B. BOND<br>Deputy Chief<br>MARY J. HAHN<br>DC Bar No. 500193<br>Trial Attorney<br>Housing and Civil Enforcement Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue NW<br>Northwestern Building, 7th Floor<br>Washington, DC 20530<br>Phone: (202) 305-0921<br>Fax: (202) 514-1116<br><br>and<br><br>LAURIE A. KELLY<br>MA Bar No. 557575<br>Assistant United States Attorney<br>United States Attorney's Office<br>District of Nebraska<br>1620 Dodge Street, Suite 1400<br>Omaha, NE 68102-1506<br>Phone: (402) 661-3700<br>Fax: (402) 661-3081<br><br>Attorneys for Plaintiff |

[2] Steven Rosenbaum, Chief of the Housing and Civil Enforcement Section, and Deputy Chief Rebecca Bond do not intend to receive electronic notifications in this matter.

So ORDERED:

DATE: 3/2/2012

The Hon. Cheryl R. Zwart
U.S. Magistrate Judge

**Attachment "A" to Rule 26(f) Stipulation/Order: Metadata Fields**

| Name of Field | Type of field | Contents | | | | |
|---|---|---|---|---|---|---|
| | | E-mail | Word Processing or PDFs | Spreadsheets | Digital Photos | Paper |
| Begin_Bates | Text | Bates number for the TIFF image of the first page | Bates number for the TIFF image of the first page | Bates number for the TIFF image of the first page | Bates number branded onto a TIFF file that has the same resolution as the native image file. | Bates number for the TIFF image of the first page |
| End_Bates | Text | Bates number for the TIFF image of the last page | Bates number for the TIFF image of the last page | Bates number for the TIFF image of the last page | Bates number branded onto the native image file | Bates number for the TIFF image of the last page |
| Attachment Range | Text | Bates range starting with the first page of the parent document through the last page of the last attachment. Blank if there are no child documents | Bates range starting with the first page of the parent document through the last page of the last attachment or embedded file. Included only if part of a group of documents like an email or zip file. | Bates range starting with the first page of the parent document through the last page of the last attachment or embedded file. Included only if part of a group of documents like an email or zip file. | Bates range starting with the first page of the parent document through the last page of the last attachment or embedded file. Included only if part of a group of documents like an email or zip file. | Bates range of all documents that were grouped together/ physically attached by clips, staples, or binding or folder. Blank if a single non grouped document |

| Name of Field | Type of field | Contents | | | | |
|---|---|---|---|---|---|---|
| | | E-mail | Word Processing or PDFs | Spreadsheets | Digital Photos | Paper |
| Custodian | Text | The name of the person who had primary control over the location from which the document was collected | The name of the person who had primary control over the location from which the document | The name of the person who had primary control over the location from which the document | The name of the person who had primary control over the location from which the document | The name of the person maintaining the file from which the paper was obtained |
| Author | Paragraph | "From" field | <blank> | <blank> | <blank> | <blank> |
| To | Paragraph | "To" field | <blank> | <blank> | <blank> | <blank> |
| CC | Paragraph | "CC" field | <blank> | <blank> | <blank> | <blank> |
| BCC | Paragraph | "BCC" field | <blank> | <blank> | <blank> | <blank> |
| Subject | Paragraph | "Subject" field | <blank> | <blank> | <blank> | <blank> |
| DateSent | Date | The date and time the message was sent | <blank> | <blank> | <blank> | <blank> |
| MD5Hash | Paragraph | The MD5 hash value calculated when the file was collected or processed. | The MD5 hash value calculated when the file was collected or processed. | The MD5 hash value calculated when the file was collected or processed. | The MD5 hash value calculated when the file was collected or processed. | <blank> |
| Native_File | Paragraph | <blank> | The path to the native file on the production media | The path to the native file on the production media | <blank> | <blank> |
| Responsive to | Text | Document request no for which this document is responsive. | Document request no for which this document is responsive. | Document request no for which this document is responsive. | <blank> | <blank> |

| | Blank field |
| --- | --- |

Attachment A-3