IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **4:11CV3209** |
| vs. | |
| UNIVERSITY OF NEBRASKA AT KEARNEY; et. al, | **MEMORANDUM AND ORDER** |
| Defendants. | |

Pending before me is the United States' motion to compel, (Filing No. 103), and its motion to strike portions of the defendants' responsive brief, (Filing No. 115).  For the reasons discussed below, the plaintiff's motion to compel is denied, and its motion to strike is denied as moot.[1]

## THE COMPLAINT

The United States' complaint is brought on behalf of Brittany Hamilton and other persons who may have been injured by Defendants' alleged violations of the Fair Housing Act ("FHA").  Specifically, the United States claims the defendants prohibited or hindered students from living with emotional assistance animals in university housing when such animals were needed to accommodate the requesting students' mental disabilities. The United States seeks a judgment which declares the defendants thereby violated the FHA, an order enjoining the defendants from doing so in the future, an award of damages for all aggrieved by the defendants' alleged discrimination, and assessment civil penalties pursuant to 42 U.S.C. § 3614(d)(1)(C).

---

[1] The court filed a redacted version of the defendants' brief and changed the security settings for the original brief to restricted access.  The court did not consider any settlement discussions in considering and deciding the government's motion to compel.

The United States' complaint alleges no discriminatory conduct other than the failure to permit students to reside with emotional assistance animals in university housing.  It alleges nothing about reasonable access to academic programming, financial aid, employment, health care, or university facilities other than housing.

## FACTUAL FINDINGS

This case was filed on November 23, 2011, (Filing No. 1), and the defendants' answer was filed on January 27, 2012.  (Filing No. 12).  On March 2, 2012, the parties filed a Stipulation and Order Regarding Discovery which outlined the form and manner of producing electronically stored information (ESI).  This order on stipulation required the parties to confer about search terms, produce ESI in specific formats, and de-duplicate ESI.  (Filing No. 16).

The government served requests for production on April 6, 2012.  On May 24, 2012, after several conferences about ESI, the United States sent a list of proposed terms, electronic databases, and custodians to be searched.  The discovery deadlines were cooperatively extended, and the court entered orders governing disclosure, including a protective order. (Filing No. 21; Filing No. 26).  On August 3, 2012, Defendants produced hard copies of documents, but it objected to the scope of the United States' proposed ESI search terms and it did not produce any electronic files.  The United States produced non-privileged documents responsive to the defendants' discovery requests, including ESI, on August 6, 2012.

On August 30, 2012, after conferring with counsel, the court entered an order which stated, "The parties' cross-motions for summary judgment on the issue of whether the Fair Housing Act is applicable to university housing for students attending college shall be filed on or before October 3, 2012."  (Filing No. 32).  After extending this

deadline at the parties' request, (Filing No. 33), the parties' summary judgment motions were timely filed on November 6, 2012,  (Filing No. 37; Filing No. 40).   While the summary judgment motions were under advisement, the parties continued discussing search terms and the production of ESI.  A proposed search term list was provided by the government on December 31, 2012.  Defendants' electronic discovery vendors began using the United States' search term list to create a frequency list.

The court ruled on the cross-motions for summary judgment on April 19, 2013, (Filing No. 80), holding that "for purposes of this case, . . . UNK's student housing facilities are 'dwellings' within the meaning of the Fair Housing Act."  (Filing No. 80, at CM/ECF p. 12).

Defense counsel produced a frequency list to the United States' counsel on May 1, 2013.  But the list included duplicative documents.  On May 21, 2013, Defendants' counsel notified the government's counsel that the defendants did not intend to proceed with ESI discovery.  (Filing No. 90).

After conferring with counsel on August 19, 2013, in an attempt to avoid the discovery battle now erupting, the court stayed discovery pending the outcome of a settlement conference.  The conference was scheduled to be held on September 10, 2013. (Filing No. 92).  The government's representative in Washington, D.C. was granted leave to appear by telephone, provided he was accessible by telephone at all times during the conference.  (Filing No. 92).

A two-day conference was held to no avail.  The parties were afforded an additional four months to try to resolve their case.  The case did not settle, and based on the representations of the parties, the court concluded further settlement efforts would

serve no purpose.  A new progression schedule was entered on January 10, 2014.  (Filing No. 98).

The parties engaged in further discussions regarding the scope of ESI.  The defendants objected that the government's search parameters were too expansive, and the cost of compliance would be unduly burdensome.  (Filing No. 113-5).  The defendants explained that the cost of retrieval, review, and production would approach a million dollars, and provided an outline identifying the document "hits" and the estimated discovery costs.  (Filing No. 113-5, at CM/ECF pp. 5-10).  The defendants argued this burden of production was unwarranted, explaining that in its initial response to the government's document production requests, it provided "all documents related to requests for reasonable accommodation in University housing," without limiting the response to "Ms. Hamilton and Ms. Kraft, but include[ing] all other requests for reasonable accommodation in University housing, all of were granted."  (Filing No. 113-5).

The government served revised search terms on April 14, 2014.  (Filing No. 105-1, at CM/ECF p. 5, ¶ 15; Filing No. 105-9; Filing No. 105-10).  Although narrowed, the government's search terms would still yield 51,131 responsive documents, (Filing No. 113-12), and based on the defendants' estimate, would require the defendants to expend an additional $155,574 to retrieve, review, and produce the responsive ESI.  (Filing No. 113-4).

If the government's proposed search terms were used, the defendants would need to produce ESI for every person with a disability who sought any type of accommodation from UNK, including students seeking academic accommodations, employees seeking employment accommodations, and the general public seeking accommodations for using UNK's non-housing facilities.  (Filing No. 113, at CM/ECF p. 11).  The government does

not deny this characterization, and defends the breadth of the requests by stating a small group of UNK officials made all the accommodation decisions, and as to the issue of their intent to discriminate, "any distinction between the housing and non-housing contexts . . . is an artificial one." (Filing No. 104, at CM/ECF p. 2). The government argues "courts have consistently held that a plaintiff is entitled to discovery of all evidence of comparators and background evidence that would tend to show discriminatory conduct or disparate treatment against members of plaintiff's protected class by the relevant decisionmakers." (Filing No. 104, at CM/ECF p. 14).

So far, the defendants have paid $122,006 to third-party vendors for processing the United States' ESI requests, (Filing No. 120-1). The defendants are not refusing to produce ESI, but propose the ESI requests must be narrowed to the "housing" or "residential" context. The defendants' search terms would yield 10,997 responsive documents. (Filing No. 105-1, at CM/ECF pp. 5-6, ¶ 118; Filing No. 113-11).

The government claims the defendants' search term proposal is too narrow, and will not even yield some of the known relevant documents the parties have already exchanged. (Filing No. 105-1, at CM/ECF p. 6, ¶ 20). The government proposes that the defendants simply disclose all the documents subject to a clawback agreement because the federal government can perform the requested search without incurring additional attorney fees and costs beyond those already being spent by the federal government. (Filing No. 105-1, at CM/ECF p. 8, ¶ 33). But the defendants claim disclosure with a clawback agreement would violate the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, by revealing the personal identifiable information of third party students without notice and their consent. (Filing No. 113, at CM/ECF p. 24).

The government's motion to compel was filed on May 19, 2014. (Filing No. 103). The defendants argue that "[g]iven the amount at issue in the case and the fact that UNK

has already produced documents related to accommodation requests in university housing, UNK requests that the United States bear the cost of any further searches, predictive coding software that may be used, hosting fees, and attorneys' fees for review time."  (Filing No. 114, pp. 3-4).

The court ordered the parties to provide answers to specific questions regarding their efforts at resolving ESI as part of any motion to compel filed.  The government's responsive statement does not include information comparing the cost of its proposed document retrieval method and amount at issue in the case, any cost/benefit analysis of the discovery methods proposed, or a statement of who should bear those costs.  (Filing No. 104, at CM/ECF p. 29, ¶ v).

## LEGAL ANALYSIS

Under Rule 26 (b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  But the scope of permissible discovery under Rule 26(b)(1) is limited by the "proportionality" or balancing test set forth in Rule 26(b)(2)(C).  Under Rule 26(c)(2)(C):

> [T]he court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> > (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> >
> > (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(c)(2)(C).  This test is highly useful when addressing the scope, costs and burdens of electronic information discovery to resolve electronic discovery disputes.

The government's complaint alleges housing discrimination.  Courts have permitted plaintiffs alleging a practice or pattern of discrimination to prove their case with evidence of Defendant's other discriminatory actions.  See Trevino v. Celanese Corp., 701 F.2d 397, 405 (5th Cir.1983); Miller v. Poretsky, 595 F.2d 780, 790–791, 796 (D.C.Cir.1978) (Robinson, J., concurring) (evidence of past acts of discrimination is relevant to prove motive in discrimination cases).  But the scope of that discovery is not limitless.  Sallis v. University of Minn., 408 F.3d 470 (8th Cir. 2005) (holding Plaintiff's request for information on every allegation of employment discrimination against the defendant was overly broad and unduly burdensome, and district court was entitled to limit discovery to information regarding the department in which plaintiff worked); Scales v. J.C. Bradford and Co., 925 F.2d 901, 906 -907 (6th Cir. 1991) (holding discovery in discrimination cases is broad, but "is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant"); Equal Employment Opportunity Commission v. Packard Elec. Division, General Motors Corp., 569 F.2d 315 (5th Cir. 1978) (affirming a trial court decision denying enforcement of EEOC subpoenas demanding production of the employer's facility-wide "workforce breakouts" for all personnel at all facilities, along with each employee's race and sex, job classification, labor grade, date of hire, and pay rate, where the actual sex discrimination claim before the EEOC involved a relatively narrow factual situation).  See also E.E.O.C. v. CRST Van Expedited, Inc., 679 F.3d 657, 675 (8th Cir. 2012)

7

(affirming the court's limit on the government's broad-reaching discovery aimed at identifying potential additional members of a class alleging discrimination).

The government's proposed ESI requests would disclose "documents about other reasonable accommodation requests by individuals with disabilities, other disability-related discrimination complaints, and the disability documentation requirements for reasonable accommodations" at UNK.   (Filing No. 104, at CM/ECF p. 13).   The government objects to narrowing its discovery requests to the context of "housing" or the use of "animals" as an accommodation.   (Filing No. 104, at CM/ECF p. 13, n. 5). Although the government asserts "courts have consistently held that a plaintiff is entitled to discovery of all evidence of comparators and background evidence that would tend to show discriminatory conduct or disparate treatment against members of plaintiff's protected class by the relevant decisionmakers," (Filing No. 104, at CM/ECF p. 14), the court is not convinced.   See, e.g., Gillum v. ICF Emergency Management Services, L.L.C. 2009 WL 2136269, 6 n. 5 (M.D. La. 2009) (holding an employee who asserted age discrimination and pay disparity claims was not entitled to discover information concerning all prior discrimination, retaliation and harassment complaints against his employer by employees who were not similarly situated); Tumbling v. Merced Irr. Dist., 262 F.R.D. 509, 526 (E.D. Cal. 2009) (limiting discovery in a discrimination action where the plaintiff requested production of documents for alleged conduct unrelated to the type of claims being raised); Pleasants v. Allbaugh, 208 F.R.D. 7, 15 (D.D.C. 2002) (stating "the proper scope of discovery seeking other complaints of discrimination against defendant must be limited in time, type of action complained of or type of discrimination alleged"); Childers v. Slater   1998 WL 429849, 4 (D.D.C. 1998) (holding "seeking information about all discrimination actions filed against an entire agency sweeps too broadly as such a request involves cases which are irrelevant to the issues before the court," and if the plaintiff seeks information to prove a pattern of discrimination, discovery will be permitted only to the extent that it is tied to the allegations within the

complaint); Syed v. Director, F.B.I., 1990 WL 259734, 2 (E.D. Pa. 1991) ("Discovery in Title VII cases involving highly individualized claims of discriminatory treatment should be restricted to the practices at issue in the case, applied to employees in similar circumstances to determine whether the employer treats all of its employees under those circumstances in the same manner, or whether it treats employees similarly circumstanced differently and there is some basis for concluding that the difference in treatment is predicated on race, sex or some other prohibited grounds of unlawful discrimination."); Miles v. Boeing Co., 154 F.R.D. 117, 121 (E.D. Pa. 1994) (collecting cases and noting that in discrimination cases, courts impose restrictions as to time period, location, the job category, type of action by which plaintiff was aggrieved, and type of discrimination alleged); Robbins v. Camden City Bd. of Education, 105 F.R.D. 49 (D.N.J. 1985) (holding that where the plaintiff alleges illegal denial of tenure, discovery concerning defendant's practices in hiring, promotion, transfer, discharge, and so on, "seems one step beyond the parameters of relevance in its broadest sense" and the discovery must be limited to prevent "fishing expeditions," discovery abuse and the inordinate expense involved in overbroad and far-ranging discovery requests.); Hardrick v. Legal Servs. Corp., 96 F.R.D. 617, 619 (D.D.C. 1983) (stating the discovery in Title VII cases involves highly individualized claims of discriminatory treatment and the employer was not required to answer plaintiff's discovery concerning the entire scope of defendant employer's personnel practices and procedures for the entire corporation); Hinton v. Entex, Inc., 93 F.R.D. 336, 337 (E.D.Tex.1981) (holding discovery should be limited to the facility where the plaintiff worked, in a multi-facility company, when plaintiff's specific allegations involved discrimination only at plaintiff's facility); McClain v. Mack Trucks, Inc., 85 F.R.D. 53, 62 (E.D. Pa.1979) (explaining "statistical information may be used to establish that the treatment of a particular employee follows a general pattern of employer discrimination," but limiting discovery where the plaintiff alleged illegal discharge, but sought information concerning the defendant's litigation

history in hiring, seniority, promotion, classification, transfer and discharge as "one step beyond the parameters of relevance in its broadest sense").

"When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." (citing Simpson v. Univ. of Colo., 220 F.R.D. 354, 359 (D.Colo. 2004)). But when a discovery request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request. Lehman Brothers Holdings Inc. v. Universal American Mortgage Company, LLC  2014 WL 1824497, 4 (D. Colo. 2014). See also Cornell v. Jim Hawk Truck Trailer, Inc.  298 F.R.D. 403, 406 (N.D. Iowa 2014) ("The party resisting production of requested information bears the burden of establishing the lack of relevancy, unless that lack of relevancy is obvious.").

The government's proposed ESI discovery, aimed at obtaining every electronic document which mentions any allegation of discrimination, or any accommodation requested or afforded to any person with any disability—whether a UNK student or a member of the public—is well beyond the allegations at issue in this case; specifically, UNK's alleged discriminatory practice of hindering or prohibiting a student's use of emotional assistance animals in university housing.  The court finds the government's proposed ESI is, on its face, overly broad, not "reasonably calculated to lead to the discovery of admissible evidence," (Fed. R. Civ. P. 26(a)(1) (emphasis added)), and inconsistent with the goal of securing "the just, speedy, and inexpensive determination" of this case as required under the Rule 1 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 1.

Even if the court assumes the government's requested discovery may be relevant as that term is defined under Rule 26, the court must decide whether "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery."   26(b)(2)(C)(iii).   UNK has already produced "all documents related to requests for reasonable accommodation in University housing," without limiting the response to "Ms. Hamilton and Ms. Kraft, but includ[ing] all other requests for reasonable accommodation in University housing. . . ." (Filing No. 113-5).   As to the housing discrimination issues raised in the government's complaint, the information received from UNK addresses the primary elements of the government's claims.   The government's additional requests are aimed at possibly unearthing evidence of UNK's discriminatory attitude or practices on an institutional level, the goal being to shore up a claim of discriminatory intent and pursuit of civil penalties.   The government has made no showing that such evidence may even exist: There is no deposition testimony or written discovery response of record providing a reason to suspect wide-scale discriminatory intent or practices by the university.   Having received all discovery identifying those who requested housing accommodations, the government has located only two people who were allegedly not permitted to live with emotional assistance animals.   Thus far, UNK has already spent over $100,000 in an attempt to satisfy the government's ESI demands, and the government's proposed additional ESI would cost more than $150,000.   Having considered the issues actually being litigated in this case, the court finds the additional cost of the government's proposed additional ESI will far outweigh what could be gained by requiring a wholesale retrieval, review and production of that discovery.

The government claims that the university's cost estimate would be much lower if the court ordered UNK to disclose the requested documented without first reviewing them.   The government claims the order could preserve UNK's right to "clawback" any

privileged or confidential documents the government intends to use.  UNK argues that with or without a clawback order, it would need to review all documents prior to disclosure and redact the personal identifiers of students who are not parties to this litigation and by asserting claims or requesting services and accommodations, did not thereby agree to release their personal information to the federal government.  UNK's position is correct.

The government's proposed ESI impacts not only UNK, but the privacy interests of all students (and possibly employees and members of the public) who have raised discrimination concerns or requested accommodations of any kind—including for health reasons, learning disabilities, mental impairments, etc.[2]  The public and the university's student population may be understandably reluctant to request accommodations or voice their concerns about disparate or discriminatory treatment if, by doing so, their private files can be scoured through by the federal government for a wholly unrelated case.  The government's reach cannot extend that far under the auspices of civil discovery; at least not without first affording all nonparties impacted with an opportunity to consent or object to disclosure of information from or related to their files.

The court will not order the university to produce ESI without first reviewing the disclosure, even with the protection afforded under a clawback order.  And if UNK must review the more than 51,000 documents requested by the government's proposed ESI requests, the cost in both dollars and time exceeds the value to be gained by the government's request.

---

[2]  The government's ESI requests would retrieve documents seeking non-housing accommodations to disabled students seeking academic adjustments in the classroom (such as longer testing time), disabled employees seeking employment accommodations, and members of the public seeking accommodations to attend UNK events.

The government claims the expansive ESI search terms proposed are necessary because absent using those terms, the ESI search will not reveal a complete set of documents.  In support of this claim, it points out that UNK's proposed terms will not retrieve known relevant documents the government already possesses, and argues "basic cross-checking against known relevant documents reveals that the Defendants' proposed search term list will omit relevant documents."  (Filing No. 104, at CM/ECF p. 21).

Searching for ESI is only one discovery tool.  It should not be deemed a replacement for interrogatories, production requests, requests for admissions and depositions, and it should not be ordered solely as a method to confirm the opposing party's discovery is complete.  For example, the government proposes search terms such as "document* w/25 policy."  The broadly used words "document" and "policy" will no doubt retrieve documents the government wants to see, along with thousands of documents that have no bearing on this case.  And to what end?  Through other discovery means, the government has already received copies of UNK's policies for the claims at issue.  See Filing No. 104, at CM/ECF pp. 19-10).

The government claims, however, that it still needs documents describing "why the guidelines were changed, who advocated for the changes, what changes were considered and adopted or rejected, drafts of the changes, or whether and how the changed policy has affected the Defendants' decisionmaking process."  (Filing No. 104, at CM/ECF p. 20).  Having considered the allegations and docket filings, and absent any evidence that the defendants hid or destroyed discovery and cannot be trusted to comply with written discovery requests, the court is convinced ESI is neither the only nor the best and most economical discovery method for obtaining the information the government seeks.  Standard document production requests, interrogatories, and depositions should suffice—and with far less cost and delay.

Accordingly, for the reasons discussed above, and to promote "the just, speedy, and inexpensive determination" of this case (Fed. R. Civ. P. 1),

IT IS ORDERED:

1)      The government's motion to compel, (Filing No. 103), is denied.

2)      The government's motion to strike, (Filing No. 115), is denied as moot.

August 25, 2014.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge